# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENT POWE, | : | CIVIL NO. 3:10-CV-2534 |
| Plaintiff, | : | (Magistrate Judge Carlson) |
| v. | : | |
| OFFICER SHOVLIN, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. Statement of Facts and of the Case

This is a civil rights action brought by Kent Powe, a state inmate housed at the State Correctional Institution (SCI) Smithfield. In his complaint, Powe alleges that the Defendants failed to honor his "Supreme Court hair exemption" in November of 2009, when correctional staff allegedly disciplined Powe for failing to cut his hair. (Doc. 3.) Powe seeks damages, expungement of his prison disciplinary record, and release from the prison restricted housing unit as remedies for these alleged constitutional infractions. (Id.)

The Defendants have now filed a motion for summary judgment, which raises as a threshold matter the defense that Powe has failed to exhaust his administrative remedies with respect to this November, 2009, incident. Since exhaustion of these administrative remedies is an absolute prerequisite to filing a lawsuit in federal court,

the Defendants insist that Powe's failure to exhaust these remedies now bars him from pursuing this litigation.

With respect to this threshold legal issue the undisputed facts can be simply stated: At the time of the episodes which form this basis of this lawsuit, inmates like Kent Powe had clear and well-established administrative grievance procedures available to them to challenge prison official actions like disciplinary decisions. At the time of this incident these administrative remedies for inmate grievances were provided for in Department of Corrections Administrative Directive 804 ("DC-ADM 804"). The Department of Corrections' grievance system entailed a three-step process. Pursuant to DC-ADM 804, the first step in the inmate grievance process is an initial review. An inmate must submit a grievance within 15 working days of the event on which the grievance is based. (DC-ADM 804 (VI)(A)(8).) An inmate who was dissatisfied with the initial review decision is permitted to appeal to the Facility Manager within 10 working days of the date of the initial review decision. (DC-ADM 804(VI)(C)(1)(b).) At a state correctional institution, the Facility Manager was the institution's Superintendent. (DC-ADM 804(IV)(G).) An appeal to final review could be sought through the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") by filing an appeal to that office within 15 working days of the date of the Facility Manager's decision. (DC-ADM 804 (VI)(D)(1)(b).) Extensions to these deadlines could be granted at the discretion of the agency if the inmate submitted a

written explanation for a failure to timely file the grievance or an appeal. (DC-ADM 804 (VI)(B)(3), (VI)(C)(2)(a), (VI)(D)(1)(c). (Doc. 30, Sears decl. at ¶2.) All inmates are provided with a copy of the grievance system in their inmate handbooks. (Doc. 30, Sears Decl. at ¶ 2.)

In this case the prison actions which Powe now protests arose out of a November 5, 2009, dispute between Powe and staff at SCI Smithfield. As a result of this incident, on November 5, 2009, a misconduct report was issued to Powe charging him with refusing to obey an order. ( Doc. 30, Hollibaugh Decl. at ¶ 7 and Attach. 3.) Four days later, on November 9, 2009, a disciplinary hearing was held concerning this misconduct report. At this hearing, Powe was found guilty of the charge of refusing to obey an order, and was sanctioned to 45 days of disciplinary custody. (Doc. 30, Hollibaugh Decl. at ¶ 8 and Attach. 3.) Powe did not appeal this decision. (Hollibaugh Decl. at ¶ 9.)

While Powe did not grieve the discipline imposed upon him, he did make halting and incomplete efforts to challenge these actions in another way. Specifically, on December 1, 2009, Powe filed a prison grievance claiming he was threatened by Officer Shovlin and Unit Manager Campopiano to cut his hair. (Doc. 30, Hollibaugh Decl. at ¶ 3 and Attach. 1.) That grievance was considered, and denied, at the initial step in the Department of Corrections multi-tier grievance process on December 10, 2009.(Doc. 30, Hollibaugh Decl. at ¶ 4 and Attach. 2.) Having had his initial grievance

denied, Powe then did not complete the three-step grievance process. Specifically, Powe never took the final step prescribed by prison rules by filing an appeal of this decision to the Department of Corrections, Secretary's Office of Inmate Grievances and Appeals. (Doc. 30, Sears Decl. at ¶¶ 4-5; Hollibaugh Decl. at ¶ 5.)

In the declaration which Powe attached to his response in opposition to this summary judgment motion Powe concedes that he did not fully exhaust his administrative remedies with respect to this grievance. (Doc. 34.) Thus while Powe states that he filed an initial grievance with respect to this incident (id., ¶¶2 and 3), and appealed the denial of that grievance to the prison superintendent (id., ¶4), Powe does not dispute the Defendants' assertion that he never completed the final step in the administrative grievance process by filing an appeal of this decision to the Department of Corrections, Secretary's Office of Inmate Grievances and Appeals. (Doc. 30, Sears Decl. at ¶¶ 4-5; Hollibaugh Decl. at ¶ 5.)

The Defendants' motion for summary judgment on the threshold issue of exhaustion of administrative remedies has now been fully briefed by the parties, (Docs. 28-31, 33-35), and is, therefore, ripe for resolution. Because we find that Powe did not fully comply with the grievance process, has failed to totally exhaust his administrative remedies, and has failed to provide an adequate explanation for his noncompliance with these mandatory grievance procedures, the Defendants' summary judgment motion will be granted.

### III. Discussion

#### A. Summary Judgment-Standard of Review

The Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

### B. Powe Has Failed to Properly Exhaust His Administrative Remedies.

The Defendants urge the Court to grant summary judgment on the Plaintiff's claims because Powe failed to fully exhaust the administrative remedies available to him under Department of Corrections procedures. In fact, in November, 2009, when this incident occurred, there were grievance procedures available to Powe in the Department of Corrections to address his concerns. The administrative procedure that inmates must use to prosecute grievances is provided for in Department of Corrections Administrative Directive 804. This grievance system is comprised of three tiers. Pursuant to DC-ADM 804, the first step in the inmate grievance process, except for those expressly governed by other procedures, is an initial review. At this stage, an inmate must submit a grievance within 15 working days of the event on which the grievance is based. An inmate who is dissatisfied with the initial decision may appeal to the Facility Manager within 10 working days from the date of the initial review decision. At a state correctional institution, the Facility Manager is the institution's Superintendent. If an inmate is not satisfied with the result of the Facility Manager's review of his appeal, he may appeal to final review with the Secretary's Office of Inmate Grievances and Appeals by filing an appeal with that office within 15 working days of the date of the Facility Manager's decision. Extensions to these deadlines could be granted at the discretion of the agency if the inmate submitted a written

explanation for a failure to timely file the grievance or an appeal. (DC-ADM 804 (VI)(B)(3), (VI)(C)(2)(a), (VI)(D)(1)(c). (Doc. 30, Sears decl. at ¶2.)

Powe's failure to fully exhaust these administrative remedies has substantive significance for the Plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory

exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006).

This broad rule admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d. Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F.App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F.App'x at 368. See also, Brown v. Croak, 312 F.3d 109,

110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or proof of some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F.App'x 365, 368 (3d Cir. 2002). Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir.

2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

In this case, it is evident that Powe has not fully exhausted his administrative remedies with respect to this incident since he has not completed the multi-step administrative appeal process prescribed by prison rules. Indeed, it is undisputed that Powe never took the last step prescribed by prison rules by filing an appeal of this decision to the Department of Corrections, Secretary's Office of Inmate Grievances and Appeals. (Doc. 30, Sears Decl. at ¶¶ 4-5; Hollibaugh Decl. at ¶ 5.) In fact, in the declaration which Powe attached to his response in opposition to this summary judgment motion Powe concedes as much, stating that he filed an initial grievance with respect to this incident (id., ¶¶2 and 3), and appealed the denial of that grievance to the prison superintendent (id., ¶4), but never disputing the Defendants' assertion that he did not complete the administrative grievance process by filing an appeal of this decision to the Department of Corrections, Secretary's Office of Inmate Grievances and Appeals. (Doc. 30, Sears Decl. at ¶¶ 4-5; Hollibaugh Decl. at ¶ 5.) Thus, a straightforward application of the PLRA's exhaustion requirements, which include a procedural default component requiring inmates to fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court, Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), calls for dismissal of this action.

Powe's efforts to avoid this outcome, and evade dismissal of this action based upon his failure to properly exhaust his administrative remedies, are unavailing. This is not a case in which Powe can credibly claim that his failure to fully exhaust these administrative remedies is a product of the fact that he was "[actively] misled [or impeded by Corrections staff] or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368. Indeed, Powe makes no such claim here. Instead, at bottom, Powe invites the Court to accept his partial compliance with the grievance process as substantial compliance and excuse any further adherence to these grievance procedures.

This we cannot do. Such an assertion is simply insufficient to justify a failure to fully exhaust these remedies since an inmate may not be excused from this requirement by merely alleging that the Department of Corrections policies were not clearly explained to him; Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002), or by claiming that he was confused regarding these grievances procedures. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005).

In sum, since Powe has not fully exhausted his administrative remedies within the corrections system, the PLRA compels us to dismiss this action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a).

### III. Conclusion

Accordingly, for the foregoing reasons, the Defendants' motion for summary judgment, (Doc. 28) is GRANTED.

So ordered this 2d day of February, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge